IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00004-CV

 

Rubye Mangum, as Executrix of the 

Estate of La Vada Oakes and as 

Beneficiary of the Will of La Vada 

Oakes and Paul Bradley Walker and 

Brenda Walker Owens,

                                                                                    Appellants

 v.

 

Trent Turner and Donny Turner,

                                                                                    Appellees

 

 



From the 77th District Court

Freestone County, Texas

Trial Court No. 04-219-B

 



DISSENTING Opinion










 

            The fundamental question in this
proceeding is whether an enforceable contract to settle pending litigation was
breached.  The most important question, the one I thought was the reason we
granted oral argument, is whether Rule 11 is a statute of frauds as to all
agreements which purport to settle any matter in pending litigation, including
the merits of the litigation, even if the agreement is not otherwise subject to
a statute of frauds.  That is not the question resolved by the majority.

Ships in the Night

            I have never seen a more fundamental disconnect
between the prevailing parties’s argument about what the trial was about and an
opinion affirming that victory than in this proceeding.  Because the level of
the disconnect is so great, no useful purpose would be served by a single
judge’s review of the issues raised in this appeal.  Therefore, after I explain
the disconnect, I will only briefly comment on the nature and merits of the
appeal.

            The majority goes to great effort to
differentiate what they view as different agreements because they view it as
dispositive of this appeal.  Their entire analysis is based upon it.

Background Facts

            Shortly before an impending trial
date, the parties engaged in settlement discussions.  At least some of the
lawyers and parties believed they had orally agreed to terms that would resolve
the dispute.  A letter advising the court of what they thought had been
accomplished, i.e., settlement, but without any discussion of the terms
of the settlement, was signed by the attorneys representing both sides.  The
letter was filed with the court.  I will refer to that document as the Rule 11
letter.  The usual documents for the settlement of litigation were then
prepared, as well as documents that were unique to the settlement of this
proceeding.  Those documents were being routed for signatures and all of the
attorneys and parties had signed all the documents except the person who
brought the original suit – Rubye Mangum.

            The Turners initially moved to enforce
the Rule 11 letter filed on the eve of trial as a Rule 11 agreement.  The trial
court denied the request.  The Turners then filed a claim for breach of contract. 
The claim for breach of contract was severed and tried to a jury.  After the
post-verdict motions and other proceedings, a judgment in favor of the Turners
on their breach of contract claim was rendered.  This appeal attacks that
judgment.

The Turners’s Ship

            The Turners have defended the trial
court’s judgment.  In doing so, they have, in several places in their brief,
described or characterized their claim (originally a counterclaim and then
severed).  To avoid errors that might be made by me in paraphrasing the
Turners’s statements, I will set out their positions in their own words.

            Mangum presents her “Statement of the
Issues” in a two page narrative.  The Turners contest the Statement because the
issues are premised on the inaccurate contention that the judgment was based on
an oral agreement.  In contrast to Mangum’s representations, the Settlement
Agreement, as well as associated documents, was signed by the Turners, their
counsel, and Mangum’s counsel.  The Turners submit that Mangum’s Statement of
the Issues does not accurately reflect the nature of the trial or the record of
the proceedings.

 

Appellees’ brief, pg. 2.

            The settlement documents were
delivered to Jackson’s office.  (3RR 96).  These documents were 1) a letter to
XTO Energy, Inc., directing the payment of $52,000.00 of the suspense royalties
to be paid to the Estate of LaVada Oakes (TX 4), 2) a “Full, Final and Complete
Release” (TX 5), and 3) a check in the amount of $52,000.00 payable to Rubye
Mangum and Reed Jackson (TX 6).  The Turners and Martin signed the letter and
the Release on October 11, 2005 in Jackson’s office, and Jackson’s wife
notarized their signatures.  Jackson signed the Release and the letter on the
same day.  (3RR 96-97, 132).  Jackson and Martin also signed a Take Nothing
Judgment to be presented to the court.  (TX 7; 3RR 97-98, 133).  At the time Jackson signed these documents, he had Mangum’s “permission and authority to settle” the
lawsuit “per the terms of that settlement.”  (3RR 98-99).

            Jackson received Mangum’s authority to
settle the case on September 26, 2005 when Mangum called him.  (3RR 99).  There
was no suggestion before the papers were signed that he did not have the
authority to settle the case.  (3RR 99).  There was no question in his mind
that he didn’t have Rubye Mangum’s authority to settle the lawsuit at the time
he and Martin executed the settlement documents on October 11, 2005.  (3RR
103).

 

Appellees’ brief, pgs. 11-12.

            The counterclaim to enforce the
settlement agreement was severed from Mangum’s claims by the agreement of the
parties.  (CR Feb 2, 101-03).  The trial court submitted the issue of whether
or not Reed Jackson had the authority of his client to settle to the jury.  The
jury found that Rubye Mangum authorized Reed Jackson to settle the law suit by
the payment of $104,000.00 to Mangum and a release by Mangum of her claims
against the Turners.  (CR Feb 2, 170).  Mangum filed two post-verdict motions,
a “Motion for Judgment Notwithstanding the Verdict” (CR Mar, 2-13) and a “Supplement
to Her Motion for Judgment Notwithstanding the Verdict with Opposition to any
Request for Additional Findings.”  (CR Mar, 45-107).

 

Turners’s brief, pg. 14.

            And probably the best statement of
what the Turners’s claim was about:

            This is a suit to enforce a settlement
agreement.  The agreement was evidenced by a “Full, Final and Complete
Release,” a letter directing payment of royalties as part of the consideration,
a check paying the remainder of the consideration, and a Final Take Nothing
Judgment prepared for the signature of the judge.  The Release and the letter
were signed by Donny and Trent Turner, their attorney, and Rubye Mangum’s
attorney.  The attorneys also signed the Judgment.

 

Turners’s brief, pg. 15.

            Then continuing:

            Mangum’s position is that the question
of whether or not an agreement existed had to be submitted to the jury.  Mangum
argues that because she “contends” there was no agreement, this issue must be
resolved by the fact-finder.  Contrary to this view, even when an issue is raised
by a party’s pleadings, if there is no conflict in the evidence with regard to
the matter, it should not be submitted to the jury.  Mangum cannot and does not
dispute the fact that her attorney negotiated and subsequently signed the
settlement agreement and associated documents.  Because it was uncontroverted
that the Turners, their attorney, and Mangum’s attorney all agreed to the
settlement and signed the documents, asking the jury about the existence of the
settlement agreement would have been error.

 

Turners’s brief, pg. 15.

            And the following passage makes clear
that the trial was not about an oral agreement:

            Much of Mangum’s argument is based on
the proposition that the trial court’s judgment enforced an oral agreement. 
While the Turners’ attorney did argue, mid-trial, that an oral agreement could
be enforced in this case, that issue is not before the Court because the
settlement (and the Turners’ performance) was evidenced by the written
settlement agreement and associated documents.  The Full, Final and Complete
Release (TX 5) and the letter directing payment of the suspense royalties (TX
4) were signed by the Turners, their attorney, and Mangum’s attorney. 
“Enforceable Rule 11 Agreements may be signed by counsel, and the signature of
the individual parties to the suit is not required.”  Batjet, Inc. v. Jackson, 161 S.W.3d 242, 247 (Tex.App. – Texarkana 2005, no pet.)  Thus, while Mangum’s
position that she did not authorize her attorney to settle the case undeniably
put that discrete issue in dispute, the existence and terms of the settlement
agreement were conclusively established by the exhibits noted above.  As a
result of her myopic denial of the record, Mangum’s arguments are suppositioned
on the false premise of an oral agreement and therefore lack validity, factual
accuracy, and legal support.

 

Turners’s brief, pgs. 17-18.

The Majority’s Ship

            The majority has affirmed the
Turners’s victory.  But the majority affirms the judgment on a completely
different agreement than the one upon which the Turners tried their case.  This
is evident when we look at the agreement the majority is relying upon to affirm
the trial court’s judgment, as well as the agreement the majority is expressly not
relying upon.

            To avoid the distortion of
paraphrasing, I will again quote passages, this time from the majority’s
opinion.

            In her fifth issue, Mangum also
asserts that Texas Rule of Civil Procedure 11 negates the trial court’s finding
of a settlement agreement.  To clarify, the Rule 11 Agreement that the Turners
sought to enforce was a nonspecific (“The parties to the above litigation agree
that all matters in controversy have been settled to the satisfaction of the
plaintiff and the defendants.”) document the attorneys had signed, but the
trial court refused to enforce it, and that ruling is not before us.  The
Turners apparently never filed and sought to enforce as a Rule 11 agreement the
subsequent series of signed documents (the Release, the instruction letter, and
Final Take Nothing Judgment).  See, e.g., Padilla v. LaFrance, 907
S.W.2d 454, 460-61 (Tex. 1995) (series of letters between parties was
sufficient to constitute writing that satisfied rule requiring settlement
agreements to be in writing and filed with court).

 

Maj. Op., pg. 5, fn 1.

            The tendered written release’s
statement that Mangum was ratifying the prior conveyances’ validity is
irrelevant to her statute-of-frauds argument as to the oral agreement, which
did not purport to include her ratification as a term.

 

Maj. Op, pg. 5, fn 2.

            And from the majority’s discussion of
the objections and request regarding the jury charge and the trial court’s
findings:

            In this case, the submitted question
was “necessarily referable” to the Turners’ cause of action.  Also, the trial
court’s finding is supported by sufficient evidence.  In addition to the
above-mentioned documentary evidence that supports the oral settlement
agreement that the parties’ attorneys entered into, Mangum’s attorney testified
that the Turner’s attorney accepted his offer to settle the lawsuit for
$104,000 and that he had Mangum’s permission to make the $104,000 offer, to
make the oral settlement agreement, and to sign documents evidencing the
settlement.  He let Mangum know that the $104,000 offer had been accepted, and
his secretary testified that she spoke with Mangum about settlement being
reached and that Mangum was thankful and happy.  While there was evidence that
Mangum later did not agree to the written settlement documents, plainly there
was factually sufficient evidence to support the trial court’s settlement
agreement finding and the judgment enforcing that settlement agreement.

 

Maj. Op., pg. 9.

            And finally, it could not be more
clear that the majority is affirming a judgment based on an alleged oral agreement:

            Mangum’s fourth issue complains that
the evidence is factually insufficient on the contract elements of acceptance,
mutual assent, and execution and delivery.  Here, as in the second and third
issues, Mangum’s focus is misplaced.  The settlement agreement that the trial
court found and that the judgment enforces is not the written release agreement
that Mangum did not agree to.  Instead, as we stated above, the settlement
agreement found by the trial court was the original settlement agreement
between the parties’ attorneys, which the evidence is factually sufficient to
support, as we held above.  Mangum’s fourth issue is overruled.

 

Maj. Op., pg. 10.

The Harbor

            The Turners’s ship is the written
documents prepared, circulated, and signed after the Rule 11 letter was filed. 
The majority’s ship is the oral agreement which it contends was made before the
Rule 11 letter was prepared and filed.  Thus, we have two ships passing in the
night; fortunately for the Turners, they do not collide.

            But the ships are headed to the same
harbor.  So, unless there is a legal equivalent to cross-tacking, one or both
are on the wrong course.  When the legal arguments of the victor and those of the
Court’s majority are so divergent to get to the result, it is probably a case
that was tried on the wrong theory, and in fairness to all parties (in equity)
should be reversed and remanded for a new trial.

            There may be, however, a legal theory
upon which not only is reversal an equitable result, it is a legal safe harbor
as well.  No one disputes that the Rule 11 letter lacks the specificity
required to enforce it as a Rule 11 agreement to settle this case.  No one
disputes that this suit, the severed suit for breach of contract, was about an
agreement between attorneys or parties related to a pending suit.

            Because any such agreement is not
enforceable unless it is “in writing, signed and filed with the papers as part
of the record, or unless it be made in open court and entered of record,” Rule
11 is the safe harbor, into which either ship must pass before it can safely
drop anchor.  Because it does not appear that either agreement made it to this
harbor, it appears neither is entitled to enforcement.  I will, however, defer
a complete analysis of the Rule 11 issue until the course of travel for this
litigation is more completely charted.

Conclusion

            Rule 11 was adopted for a reason. 
That reason was to avoid satellite litigation on procedural as well as
substantive issues.  Now, rather than a trial on the merits of the parties’
real dispute, we have had a jury trial and an appeal on a severed breach of
contract claim to determine if the other suit on the merits, which, of course,
is still pending, was settled.  It is clear from the majority opinion that
there is not currently an enforceable Rule 11 agreement.  However, rather than
reversing the trial court’s judgment, the majority affirms a judgment which
enforces an agreement which “touches” on pending litigation.

            If courts are going to do this, there
is no tooth, much less teeth, in Rule 11.  When I was in private practice, I
always thought that until the settlement documents were all fully inked, the
“settlement” could fall apart, and we were on for trial.  Maybe I was always
wrong.

            I respectfully note my dissent on the
basis of the foregoing discussion.

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Dissenting
opinion delivered and filed February 27, 2008